ROGER ANGSTMAN CO. *v.* LIGGETT SPRING & AXLE CO.

ANGSTMAN *v.* SAME.

1. APPEAL AND ERROR—CASE TRIED WITHOUT JURY—EVIDENCE.
   On appeal in action at law tried without a jury where no error is assigned that judgment was against the preponderance of the evidence nor motion for new trial made, Supreme Court will not weigh the evidence but merely determine if there was any evidence to support the judgment (Court Rule No. 64 [1933]).

2. CONTRACTS—CORPORATIONS—FAILURE TO FIND FRAUD.
   Failure of trial court to find fraud or collusion between general manager of corporation and other parties to contracts relating to salary, royalties and commissions *held*, justified by the record.

3. CORPORATIONS—CONTRACTS—AUTHORITY OF GENERAL MANAGER.
   Evidence in action of assumpsit by sales manager for salary and royalties and commissions on automobile bumpers *held*, sufficient to support finding of court that general manager had authority to act for corporation.

4. SAME—PRINCIPAL AND AGENT.
   Corporations are bound by the acts of their agents to the same extent and under the same circumstances as natural persons.

5. SAME—LIMITATIONS ON AUTHORITY OF GENERAL MANAGER.
   Limitations on authority of general manager of a corporation are not binding on third parties unless communicated to them.

Appeal from Ingham; Carr (Leland W.), J.  Submitted April 18, 1934.  (Docket Nos. 37, 38, Calendar Nos. 37,678, 37,679.)  Decided June 4, 1934.

Separate actions in assumpsit by Roger Angstman Company, a Michigan corporation, and Roger W. Angstman against Liggett Spring & Axle Company, a foreign corporation, for sums due on contracts relating to salary, royalties and commissions and on the common counts.  Cases tried together.

From judgments for plaintiffs, defendant appeals. Affirmed.

*Kelley, Sessions, Warner & Eger,* for plaintiffs.

*Seymour H. Person,* for defendant.

BUSHNELL, J.   These are actions in assumpsit. The plaintiff in the case of Roger W. Angstman v. Liggett Spring & Axle Company declared upon the common counts, and especially upon a written contract dated January 1, 1923.   The case of The Roger Angstman Company v. Liggett Spring & Axle Company was also based upon the common counts, and especially upon a written memorandum in the form of a letter dated October 21, 1927, addressed to plaintiff, The Roger Angstman Company, and signed by defendant, by its general manager.   By stipulation of counsel, the proofs taken in both cases, which were tried and submitted together, a jury having been waived, were taken as the proofs in each. Judgments were entered against defendant as follows:   In favor of The Roger Angstman Company, a corporation, in the amount of $4,919.90 for unpaid royalties and commissions, and in favor of Roger W. Angstman, personally, in the amount of $12,256.51, for salary accruing from date of breach to date of expiration of the contract, plus one per cent. on gross sales.

A rather extended statement of the facts seems necessary.   Roger W. Angstman, describing himself as an automotive sales engineer, has maintained an office in Detroit since 1927.   The defendant company has its office and principal place of business at Monongahela, Pennsylvania, where it operates a factory in which are made springs, trailer axles, trailer springs and similar products.   All of its stock, excepting 10 lost shares, belonged to the estate

of W. G. Park, which estate, including the defendant company, has been for years administered by the Farmer's Loan & Trust Company of New York City, through a board of five directors. John S. Skelly, a director of defendant company since 1907, its vice-president since 1917 and its president since 1928, acted as a general advisory representative of the trust company. The bulk of Skelly's time, however, was spent as president and general manager of the Coshocton Iron Company, located adjacent to defendant's plant.

Prior to 1926, J. H. Neuhart was defendant's secretary-treasurer and general manager, and it was he who signed the 1923 contract. In 1927, the company advertised in the Detroit papers for a factory executive, and E. E. Ackerman, now deceased, replied and was later made general manager by Skelly, on the suggestion and advice of Angstman, so it is claimed. It was Ackerman who signed the written memorandum of 1927. Ackerman was made a director on January 10, 1928, but was discharged a few months later.

In 1922, the defendant company, desirous of increasing its automotive spring leaf business, employed Angstman and, at his suggestion, began the manufacture of bumper parts for automobiles. The Angstman company's claimed interest in a contract executed in 1927 for the sale of these parts to the Olds Motor Works led to the present litigation.

The contract given Angstman in 1923 designated him as sales manager for a period of three years; it was renewed in 1926 for three additional years and terminated on a month's notice given on February 2, 1928. Plaintiff Angstman was authorized to handle sales and quote prices, under the direction of the company, and to solicit business in its name. His compensation was fixed at $500 per month and

one per cent. on the invoice amount of all business done by the company, except that known as "vehicle" and vehicle "export." Angstman handled this and other business from an office located in Detroit. It was mutually agreed "that all agreements for the sale of the product herein mentioned are subject to the company's approval and must be signed by an officer of the company before being valid."

In 1925, Angstman formed a Michigan corporation known as the Roger Angstman Company, to engage in sales engineering. He owned or controlled all the capital stock. The 1927 agreement is with this company.

Angstman had met an inventor, by the name of Duffy who had developed an automobile bumper with two new features. This device was eventually named the "Liberty Bumper." After spending some money and considerable time on Duffy's idea, Angstman secured an exclusive license for its use on November 2, 1927, paying Duffy a considerable sum as an advance on royalties. Angstman testified that he thought Duffy had filed a patent application. This license was assigned to the Angstman company. Then followed the so-called 1927 bumper contract, which we quote:

"LIGGETT SPRING & AXLE COMPANY
"Monongahela, Pa.
"October 21, 1927.
"THE ROGER ANGSTMAN COMPANY,
"Detroit, Michigan.
                    "*Re:* Liberty Bumpers
"*Gentlemen:*
"Referring to conversation between Roger Angstman and the writer, it is mutually understood and agreed that on all orders executed by us for Liberty Bumpers, whether for fabricated parts or completed assemblies, we are to invoice the buyer at prices which you supply us as being the agreed price of

the buyer as shown by our interchange of correspondence with you or our Mr. Angstman, such prices being in excess of our prices for such material. In the event that we elect to change our prices on Liberty Bumper materials, we agree to maintain your present margin, or such margins as you direct, between our present prices and the present prices billed to the buyer.

"It is our understanding that you must pay a royalty, which is represented by the difference between our prices on the foregoing materials and the price at which the same materials were sold. This difference we shall remit to you two days following its receipt from the buyer.

"It is mutually understood and agreed that all billing for materials shall be made by us to the buyer unless you elect to have us bill you for such materials shipped and you in turn bill the buyer, remitting to us two days following receipt of such funds from the buyer our share of such remittances. We would at your option, bill the materials to the buyer on your bill heads at such prices as were agreed upon by the buyer.

"This arrangement is to continue as long as we manufacture Liberty Bumper parts or Liberty Bumpers complete, or both.

"The term 'bumpers' used above includes bumpers or bumperettes or fender guards and their component parts.

"This agreement is to be in full force and effect as of October 21, 1927.

"Yours very truly,

"Liggett Spring and Axle Company,

"E. E. Ackerman (Signed)

"General Manager.

"The Roger Angstman Company

　　"Roger W. Angstman (Signed)

　　　　"President

　　"Witness:"

Defendant claims that Skelly, while countersigning checks, discovered what he considered to be an

unauthorized and fraudulent agreement between it and the Angstman company, that it immediately discharged Ackerman and gave Angstman notice of the termination of his contract and that of the Angstman company. It therefore contends (1) that Ackerman had neither express nor implied authority to enter into the "bumper" contract; (2) that there was collusion between Angstman and Ackerman in the execution of the contract; (3) that it was voidable because not entered into in good faith and with a full disclosure by the agent Angstman to his principal, the defendant; (4) that for the purposes of the suits, Angstman, the sales manager, and the Angstman company must be regarded as one and the same entity; (5) that the trial court should have held that the plaintiff company was subjected to the same rules and close scrutiny as to good faith, full disclosure, etc., as was Angstman himself; and (6) that the burden of proving such good faith should have been placed on both plaintiffs.

Plaintiffs agree with the statement of the questions involved, except they claim that appellant's fourth question was not raised by the pleadings, and ask whether there was such a showing of bad faith, etc., as to amount to collusion and fraud justifying defendant in voiding the contract.

The record, containing some 39 exhibits and the testimony of all the available parties, has been carefully examined. It would be of no help to give the facts in further detail. A typical case of absentee ownership is disclosed, with a considerable difference of opinion as to the authority of the employee intrusted with the management. There was received in evidence a letter indicating Ackerman's authority. It is dated several months prior to the execution of the "bumper contract," *viz.*, April 30, 1927, written on the letterhead of the Coshocton Iron

Company, J. S. Skelly, president, addressed "to whom it may concern," and signed "J. S. Skelly, vice-president Liggett Spring & Axle Co." It reads:

"This is to certify that Mr. E. E. Ackerman, beginning as on this date, is appointed general manager of the Liggett Spring & Axle Company, in full charge and authority in all matters."

Skelly's explanation is that it was given as proof of Ackerman's authority over employees and was made necessary by the fact that Neuhart, the former general manager, was still associated with the company. In reply to the question, "Well, did he have the authority to execute contracts for the company?" Skelly stated: "He had the authority with the limitation that I placed on his authority in the conversation at the time that I gave him ·the written authority which was to be used for a specific· purpose." He later testified:

"I did not state that Mr. Ackerman had no authority to sign contracts. He had the authority of a general manager, subject to conferring with me on important matters."

While Angstman's authority as sales manager was limited, the testimony shows that Ackerman's was general.

The parties waived a jury and the court, who heard and saw the witnesses, held that the claim of fraud was not sustained by the proofs and that there was nothing on which to predicate a finding of collusion between Ackerman and the plaintiffs. Under Court Rule No. 64 (1933), in an action at law, tried without a jury, we may affirm or reverse the judgment, remand the cause with directions or order a new trial, but where no error is assigned that the judgment is against the preponderance of the evi-

dence, we will not weigh the evidence, in the absence of a motion for new trial, but will only determine if there is any evidence to support the judgment. *Delta Asbestos Co., Inc., v. Sanders,* 259 Mich. 317. Our examination of the testimony convinces us not only that there is such evidence, but that the conclusions of the trial court are warranted by the testimony.

Corporations are bound by the acts of their agents to the same extent and under the same circumstances as natural persons (*Delta Lumber Co.* v. *Williams,* 73 Mich. 86), and we held in *Hirschmann* v. *Railroad Co.,* 97 Mich. 384, that a chief engineer of a railroad had authority to bind his company on his contracts for supplies furnished to construction contractors. Ackerman's authority was the same as that of Neuhart. Neuhart's authority to execute the contract by which Angstman was made sales manager is not questioned. Any limitation of Ackerman's authority was not binding on others unless communicated to them. *Allis* v. *Voigt,* 90 Mich. 125; *Hage* v. *E. L. Wellman Co.,* 217 Mich. 537; and *Bay State Milling Co.* v. *Saginaw Baking Co.,* 225 Mich. 557. There is no proof of such communication.

The judgments are affirmed, with costs to appellees.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred.